This morning is field number 2011-1303, TECSEC v. IDL. I think we are ready, Mr. Stillman. You may proceed. Good morning. Good morning. May it please the court, my name is Greg Stillman and it's my pleasure to be here today on behalf of TECSEC. Prior to TECSEC's 702 family of patents, the state of the art for the protection of file data was essentially encryption, file encryption. If you wanted to protect data, you essentially had to encrypt the entire file, not a very flexible solution. The district court's construction of multi-level security was wrong at its most fundamental level because it failed to address the problem that the patent was intending to solve. And in this case, that problem was the essential limitations that are posed by file-level encryption. If you have to encrypt an entire file, those who have access, either have access, they see it or they don't see it. But if you want to send that file and have some people have access and some people not have access, you had to solve the limitations that were present in the prior art. Now, if you go back and you look at the 702 family of patents, you see that that patent discusses at some length the limitations that are posed by the encryption of data only. In fact, if you look at column two, line five, you'll see that simple encryption of data being communicated between two points provides only one level of security. In other words, the patent is saying if you just encrypt a file, you're only providing one level of security. And what we want to do is we want to figure out a way to provide yet another level of security. And what the patent does is it does that by labeling and access control. Well, let's hypothetically assume that your claim construction is right in that respect, that a combination of encryption and labeling would provide the dual layer of security. What IBM says is that with respect to the system's claims, that there isn't any evidence in the record that the IBM system can accomplish that, that they're not electronically connected. This is on page 38 of the red brief. And they cite testimony, which I've read, and which seems to support that. What's your response to that? Well, I have several responses to it. First of all, I think you have to go back and you look at the district court's opinion. You'll see that her entire infringement analysis is obviously inextricably bound up with her construction of the claim. So that's part of the problem. Part of the problem is you can't do an infringement analysis unless you get the claim construction right. Yeah, but the point Judge Dyke is making is that what difference does the claim construction make given the evidence that the IBM system, the accused system, doesn't meet the claims even interpreted the way you'd like them to be interpreted? Well, let me just say this. If you go back and you look at this record, you're going to see that this record is full of evidence that the system claims. That's the problem the district court had with what you do. You dump a lot of stuff on them and you say, you look at it and you'll find that we're right. You have to show us where you have raised a genuine issue of material fact with respect to this issue that IBM has raised and they have cited evidence which supports them. Where's the contrary evidence? Well, I would submit to you, your honor, that if you look at the record, you'll find that... No, not look at the record. You tell me where in the record I can find it. And that's exactly what I'm going to do. First of all, if you look at the declaration that Dr. Stubblebine submitted in this case, you'll see that he... No, no, I know where the declaration... where in his declaration. When you respond to this point, you give us a 50 page or something like that range citing his affidavit. Where does he contradict this point in his declaration? What specific page and paragraph number? Well, there is no specific page and paragraph number and if you ask me to point to that, I can't do it. I have to ask you to look at that entire declaration and you'll see that if he does, he takes each and every element that's in the patent and compares those elements against the accused product. He basically says that for DBZOS, for the DCOM system claims, IBM makes and sells all of the pieces, all of the system Z hardware, all of that stuff is configured out of the box and infringes when it is offered for sale. Well, that's what he concludes, but the question is on what basis does he reach that conclusion? Well, on several. First of all, notwithstanding the fact... We can't go hunting for this. I understand and notwithstanding the fact that the court said that he did not produce source code. In fact, there is extensive source code infringement analysis in this record and I can point the court to it, in fact, in the appendix. If you go back and you look at the appendix, you'll find that detailed source code infringement analyses are done at 848, 1109, 1289, 1822, 7167, 7506. Detailed source code infringement analysis, which essentially he concludes, provides all of the functionality that's included in the elements of each of these claims that are asserted. And so, you have an expert report, you have testimony where a person of ordinary skill of the art has said that I've looked at IBM's technical documents, you have a testimony of a person of skill in the art saying that I've looked at their diagrams, I've looked at their source code, and I believe that all of these systems infringe as they are sold, not as they are configured in some... and references to pages and pages of documents in the record. That is the problem here that the district court has. That is the problem that we're having. You've got a specific statement here with respect to the system's claims. You have testimony that IBM submitted that they don't electronically connect encryption with the label, and that it doesn't provide a dual area of protection. Where does your witness refute that? Well, first of all, your honor, I think you have to remember that Texec itself filed its own motion for summary judgment in which it laid out in some considerable detail statements of fact that it considered to be uncontroverted that made out a prima facie case of infringement of these system claims. Now, you know, we could sit here and argue about whether or not these systems are configured in such a way as on their face infringe these system claims, but our problem, your honor, is that that is essentially an element of fact for resolution by a trier of fact. No, that's not an answer. You have to raise a genuine issue of material fact by coming up with a non-conclusory, specific declaration that says the facts are not the way IBM says they are, here's what they are. And what the problem is, you're unable to point to anything where you've submitted such evidence that raises a genuine issue. Well, your honor, all I can tell you is that I have a declaration that has been submitted in this case by a person of extraordinary skill in the art, who's examined the relevant source code provided to him by IBM, who finds all of the functionality of those claims present in the accused devices, and has reached the conclusion that based upon that analysis and all of the IBM technical documents and evidence that those system claims infringe. Now, I must tell you, in my experience, that's exactly how one goes about proving a claim of infringement. And to suggest that there are no legitimate issues of fact for resolution by a jury, to me, simply defies belief. I suggest you read the Supreme Court's decision in Celotex, which makes it quite clear that when you are responding to a motion for summary judgment, you've got to come forward and point out specifically where there's a genuine issue of material fact. You can't simply make bold, sweeping allegations and assume that that's going to carry the day. And you see, I don't believe that is what TechSec did. I believe that what happened was IBM came forward and said, we don't infringe these system claims, or at least there's no evidence that we do, because you don't know whether these systems as sold are configured in such a way as to constitute infringing devices. And in other words, they're sort of asking us to prove a negative. And so from my perspective, all we're required to do is to put on the testimony of a person of extraordinary skill in the art to say that I've looked at the accused devices and all of those components of those accused devices, as they are configured and sold, infringe out of the box. And so I believe that that creates a legitimate statement of fact. Is it sufficient under current law to reject a motion for summary judgment? I absolutely believe that, Your Honor, I do. In a statutory fashion? I do. Is it an issue? I do. I mean, you know, other than to say I've looked at the accused devices and I believe all of the elements of those claims, and here's where they are because I've looked at the source code and I've identified in that source code, while all of that functionality occurs, I don't know what more you could do, to be honest with you. I don't know what more you could do other than to put a person of extraordinary skill in the art on the stand and ask him, in his opinion, having looked at those accused devices, whether they meet all of the elements of the claim. I'm not sure I know what one could do. I'll be honest with you. I don't know what else could be done. And so, for those reasons, we believe that there is significant evidence in this case about the direct infringement. In fact, if you go back and you look at this record, not only did Tex-Ex present the evidence of a person's skill in the art, Tex-Ex presented the testimony of an IBM product manager who confirmed that the accused products did, in fact, do column line infringement, in his opinion. You know, does that testimony by itself prove all of the elements of this claim? Absolutely not, and I'm not suggesting that it does. But I will suggest to you that this testimony, combined with some of the other testimony that I'd like to talk about with respect to this, forms a mosaic that allows a trier of fact to reach that conclusion. Now, notwithstanding the fact, and you saw this reference in the court's opinion, that she said that IBM, I mean, that Tex-Ex essentially failed to identify source code. In fact, Tex-Ex identified specific source code infringement charts, and I've given those to you line by line that are in the appendix. Notwithstanding the fact that the courts holding that Tex-Ex failed to present any evidence of IBM's infringement of the methods claims, you heard the testimony, again, of a former IBM employer, Sajay Ray, and an expert in information security. And he testified that IBM's customers were demanding the patented features, and he said that in order to comply with HIPAA and other financial regulations, such as Sarbanes-Oxley and other data security state regulations, that those features were demanded by IBM's customers, and that in his opinion, this is a former IBM employee, an expert in security. In his opinion, it was inconceivable that IBM would have developed these patented features in the accused products, advertised those features, made extensive sales of those features, if his customers were not actually using the patented features. This is a former IBM employee. It is also undisputed in this record that all of the databases, WebSphere and so forth, are all installed on IBM hardware. Did he testify that the labeling in the encryption were electronically connected? Yes. Well, no, he did not. But let me address the whole electronically connected point, if I can. First of all, it was very curious about what the judge was, it almost seems to me as though she is suggesting that they have to be connected by wires. The real issue here is whether they are functionally and operatively connected in a computer system. In other words, whether these modules, these encryption modules, labeled modules, are in fact talking to one another, which the testimony of Dr. Stubblebine was unequivocally that it was. And in fact, if you go back and you look at the 781 patent, Claim 14, there is no electrical connection language in Claim 14, and yet that's an issue that the court didn't address in her opinion. But the issue of electrical connection is a curious one because, first of all, it's not been really defined, but as far as we're concerned, if you go back and you look at this patent, if these are operably connected in an operating computer system, they are electrically connected. They're communicating with one another. You have an encryption module communicating with a labeling module, which essentially performs the functionality required by this patent. Mr. Stubblebine, you've just about consumed your entire time a lot. We'll give you two minutes for rebuttal. Thank you. Let's hear from Mr. Damaris. Thank you, Your Honor. Good afternoon. May it please the Court, John Damaris for IBM. I think Your Honor's seized on the issues in the case. Let me start before I get into the details just to frame where we are in the case. I think it's important to keep in mind we were six days from picking a jury when this case was dismissed. Discovery was closed. Expert discovery was closed. Contentions were complete. IBM had been compelled to produce over 7 million pages of documents. IBM had been compelled to produce the source code for all these products. They had it for months. They had experts studying it for months. TechSec took over 40 depositions of IBM employees and ex-employees. They subpoenaed 55 of our largest customers. This case was an incredible discovery for us inside and out. And yet, even today as we stand here, they don't have a Rule 11 case to go forward. They ignored our interrogatory on tell us why we infringe and tell us why we induce infringement. The district court cited that. What does this have to do with what we're talking about here today? Why don't you address the substantive merit? This isn't a Rule 11 motion. Your point is well taken, Your Honor. But I think the only reason I gave the background is because I think in light of the background, the fact that TechSec can't even articulate where the electrical connections are and where the inputs are going as the claim elements are required is all the more stark. If you look at what's required by the 702 Patent Family Claims, as Your Honors talked about, it requires an object labeling subsystem to be electronically connected to the encryption algorithm module to accept inputs from the encryption algorithm module. If you look at the claim charts that TechSec submitted in the case in their infringement conditions, they don't even attempt to address those claim elements. If you look at the appendix on page 1294, you can see what TechSec submitted as its infringement contentions. 1294 shows us a claim element that I just articulated with the electronic connections in the input modules. It's listed there as 5 on 1294 and it goes on to 1295 and it has all the electrical connections in the inputs. If you look at the details of what they cite, they only talk about the labeling. They don't talk anywhere in their cited support about the electronic connections between the labeling and the encryption module. They don't even mention encryption. These are their final infringement contentions. The district court looked at this, had this before her, and found a complete failure of proof. It's not just on the 702, it's for the entire family of patents. Every time there was a detailed attempt to show electrical connections or the encryption algorithm talking with the labeling algorithm, they cited absolutely nothing. And it's not in Dr. Stubblebine's expert report on infringement either. Could I just defer to a moment to ask you a housekeeping question, which is just the basic question of all these moving parts and all these accused products. It's a question of whether or not we need to claim construction. Either the means plus function or certainly the bigger issue of the multimedia security in order to affirm. No, you do not. You can separate this case completely in half. And let's talk first about the first half, which we were just addressing. Regardless of the claim construction on multimedia, regardless of the claim construction on the means plus function claims, and regardless in fact of any claim construction issues, we can decide the case on a complete failure proof, and here's why. Is that true? Just if you could direct your attention. I understood the brief just with respect to the data power products that are accused. I thought your view was that we did need to reach the multilevel media. No, no, no. And so let me make that perfectly clear. For all products in the case, for all claims, this court does not need to get to claim construction because let's take first the apparatus claims. There are two flavors of the apparatus claims. Ones are the ones we've just been talking about that have the electrical connections and the input from the encryption to the labeling. Complete failure proof on that, that's not a claim construction issue. They don't even try to meet those claim elements, and that's what the district court found below. So all those claims can go out regardless of what multilevel multimedia means. Then there's a second group of claims, which are the means plus function claims. And there are, claim 8 is both, right? But then there are a few claims in the 702, claim 12, 13, 14, and 15, which don't necessarily have the electrical connections. I think we can probably discuss theoretically whether they're in there, but assume they're not in there. TechSec admits below that those are means plus function claims, right? But in their infringement contentions and in their expert report, they don't cite any corresponding structure, and they never do a comparison of the corresponding structure to the IBM products at all. Their infringement contentions are devoid of that. So we don't even have to interpret the means plus function elements in those claims. We don't have to go through and say, here's the means plus function element, here's the corresponding structure, now does it apply to the IBM products? Because they never did any of the analysis. They didn't do the corresponding structure analysis, and they never did the analysis of IBM's products to determine whether it's the same or equivalent to the corresponding structure. So there's a complete failure proof on the means plus function claims. We never have to address what do the terms mean and what's the corresponding structure, because they never did the analysis. So all of the apparatus claims go out for a complete failure proof, regardless of any claim construction issues. On the method claims, it's the same thing, again, for different reasons, which is with respect to IBM, they dropped below their accusations of direct infringement against IBM of the method claims. We briefed it on summary judgment, and in response to the summary judgment, they didn't dispute that IBM didn't use. They disputed only whether IBM was selling and making. So direct infringement of IBM is out no matter what. It's not even properly in the appeal. With regarding to whether our customers then are using the method claims, they haven't shown any proof that any IBM customer practiced all the steps of any of the method claims, regardless of the construction, regardless of whether it's multi-level multimedia, regardless of what order the steps are in. They didn't attempt to map any customer's implementation to any of the method claims. They cite in their brief a couple of examples, which are their sort of typical best case scenarios of what customers infringe. They cite a document relating to Verizon. They cite a document relating to the Tarleton State University proposal, and they cite a document to MasterCard. And I can take you through each of those, but none of those documents show the steps in the method claims. The Verizon document is undated, and it only talks about encryption. It doesn't talk about labeling whatsoever. The Tarleton State proposal, is a proposal, and there's no proof that it was ever implemented or ever used by anyone. And the MasterCard document is, again, a proposed design from 2007, and there's no proof that anybody ever implemented it. When you look at the actual documents, and don't forget, they subpoenaed MasterCard. And the best document they have is a 2007 design proposal with no indication that everyone actually implemented it. They subpoenaed Verizon, and the best thing they have is an undated document that talks only about encryption. It doesn't mention labeling anywhere. So where is the proof that any of our customers actually went through the method steps in their implemented products? Zero. Zero proof. So on all of the method claims, it's a complete failure of proof.  affirm the district court's judgment simply on failure of proof, never reaching the claim construction issues. I would like to talk briefly about the claim construction issues, should you reach them, because I do think, especially on the multi-level, there's something that in preparing for oral argument that I've realized about the specification that underscores IBM's construction, which I think is pretty useful. If we look at column 7 of 702, line 7, there's an interesting example here that talks about, it starts, this is on appendix A146, column 7, line 7, roughly. It says the steps for embedding an encrypted, embedded OPMAN object are as follows, and then it lists seven steps. The seventh step tells us multi-level media security achieved at the document level. So that's a clear telling that the first six steps have achieved multi-level multimedia. And you can look at those first six steps, and what you'll see is one encryption, and then the nested encryption, you won't see a thing about labeling. So the specification is telling us here that multi-level multimedia security is achieved by practicing those six steps. Those six steps don't mention labeling. And that occurred to me when I noticed that. That doesn't get you anywhere. There's no question that the claims, at least some of the claims, would be satisfied by dual encryption. And the fact that they describe the claims being satisfied by dual encryption hardly suggests that that's required. It's just, it's sufficient but not necessary. But if the patent specification is telling us that multi-level can be required by dual encryption and doesn't mention labeling, I think that's interesting, especially if you combine that... It could be either or. It could be either or, that you either have dual encryption or encryption plus labeling. But I was going to add, but if you combine that with what we already know, which is when the patent office rejected the claim for indefiniteness and said, we don't know what multi-level means, please clarify. In that section as well, and that section was added to the specification, the patentee says that it gives that whole description about multi-level security is achieved because we can have this necessary encryption resulting in multiple layers of encryption. That whole sort of explanation of the patent office about what multi-level means, again, it doesn't mention labeling. No, but they kept the parts of the specification that did mention labeling, and that's your problem. No, but it's not actually a problem because if we look at those, Your Honor, I actually... I'm not prepared to address that, of course. But if you look at the last two steps in the method claims on 702, labeling is actually not one of the levels in the sense of what you think about from levels. So if you look at column 12, and this is on A148, step H is determining access authorization based on the object label. So that is somebody has a label, and let's just call it a password system, right? So you put in your password, so you've achieved access now. Step I is decrypting the object if access authorization is granted. Encryption and access control are the same level. When you read what the patent claim actually does, if you have the password, or if you have the label, if you have the access, encryption's automatic. It's not a second level of protection. You can read the specification all the way through, and every single time you will see that. The label labels the object, the label determines the encryption. On the decrypt side, you put in the label access, it's automatically decrypted. It is not a second layer of protection. And that actually makes sense because if you look in the background of the invention, in column 2, this is on A143, they talk about at the top of column 2 there in the first full paragraph, simple encryption of data was known. They talk about that being one level of security. Then if you look around line 30, they talk about a second method of labeling files or messages that are sent from a sender gives you added protection. This is still the prior art now. And that system down, you can look at down in line 57, it says a system described above is disclosed in that specification. So they talk about how encryption... as both labeling and encryption. Exactly. So they say encryption is old, and then labeling and encryption is old. Here it is. And then they go on and say, here's what we did. And what they talk about what they did, they talk about a system that can limit access on an object level. Access could be specified in an object by object basis and objects can be embedded within other objects providing an access hierarchy to users. And then they go on and describe how their system is nested encryption, different from the prior art system. So then it makes sense when you look at their method claims where they're saying once you get access to an encrypted object, it's automatically decrypted. It's not a second layer of protection in their patented system. So multi-level in their patented system can't possibly mean labeling on one level. And then once you get through the labeling, you've got to somehow figure out how to decrypt as a second layer of protection because they don't do it that way in their system. So I do think that on the claim construction, you never need to get to claim construction, but if you do, take a hard look at what they actually invented here and take a hard look at when they say multi-level encryption is created, it's always two nested encryptions. It is not ever labeling and encryption. On the... Very briefly. Yes. Oh, I've just run out of time. I guess... Can I just make one more point, Your Honor, which is... Final point. Another way to dismiss the case entirely without dealing with claim construction besides what we already talked about is intent to induce. They, and the district court, decided the case on this too. It's in her opinion. They have zero evidence of IBM's intent to induce. So under this court's DSU case or the Supreme Court's global tech decision, the tech tech can't possibly meet their burden of inducement or contributory. The only thing they cite is a letter at the appendix 8097 and 8098. Tech tech sent IBM a letter in November of 2008 listing the five patents in suit and listing some products and saying you may or may not infringe one or more of these patents. This is from 2008. They listed the WASP products and the data power products, but they said you may or may not infringe. And then they don't even list the database products, the DB2, which is a big product in the case. The letter actually says in the closing paragraph, for example, we continue to investigate DB2, IMS, and IBM data encryption. So in 2008, tech tech sends IBM a letter saying you may or may not infringe these five patents. As for database products, we don't know. We're investigating. That's the sum total of their knowledge proved on inducement. Thank you. We have your point, Mr. Stillman. Thank you, Your Honor. Thank you. First, I'd like to address the question. Two minutes. I'd like to address the question of whether you need to go ahead and construe these claims. First, as a preliminary matter, I don't know how the court can do this analysis without doing it, but I need to remind you that we've got an ongoing case going here against other defendants. This case was essentially severed with respect to IBM, but there are other defendants that are in this case, and that's why this claim construction is obviously terribly important to us. And so, yes, in our view, these claims need to be construed. Multilevel security needs to be construed. Multimedia needs to be construed in order for this case to go forward in an orderly fashion. Let me also go back, Judge Dyke, to your questions with respect to where in this record there is specific evidence that these systems are electrically and operably connected. Dr. Stubblebine did say that. I will say as a preliminary matter that one of the problems that I think the parties had when they went to this hearing is they went to the hearing without knowing how the claims were going to be construed. So they were essentially sort of shooting in the dark, if you will. But as a practical matter, so nobody knew that this issue of electrically connected was really going to be an issue in the judge's mind, but as a practical matter, if you go back and look to Dr. Stubblebine's report, and this particular section appears in the appendix at page 8697, he says, he talks about the DB2ZOS system, and he says, the data encrypted by column-level encryption is inserted into a column. He's talking about the ZOS system. The access controls label such columns containing encrypted data. And then he says this, In other words, those modules are functionally connected. They're working together in order to do that. He says, also on that page, Again, part of the elements of these claims. I recognize that the district court was overwhelmed with a lot of information when this summary judgment hearing occurred. It occurred just days before trial. So I understand that, but the reality is that without a claim construction, to some extent, it may have been difficult for the parties to focus her on those aspects that she may have been particularly concerned, but it is there. It is in this record, and that's the point that we want to make today. Now, finally, I also want to make the point that if you go back and you look at this claim construction, you'll see that the problem that the patent was trying to solve were the limitations of encryption only. And that's why it's terribly important that whatever ultimate claim construction that you attach to multilevel security, that it include the concept of labeling, because unless you label an object within the context of a file that you are trying to encrypt, you cannot find it. And that is the essence... Mr. Tillman, that will have to be your last point. Thank you. I appreciate the argument. Thank you very much. I thank both counsel. The case is submitted, and that concludes the arguments for this morning. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m.